## In the United States District Court
## For the District of Columbia

Jeffrey Jones
909 New Jersey Ave SE, #901
Washington, DC 20003

        Plaintiff,

   v.

United States of America,

        Defendant.

CASE NO._____

## COMPLAINT

Plaintiff, Jeffrey Jones ("Mr. Jones") by and through the undersigned, files this Complaint against Defendant, United States of America, ("USA"), for actual, compensatory and statutory damages, and states as follows:

### JURISDICTION AND VENUE

1. This action is brought Pursuant to the Federal Tort Claims Act (FTCA) 28 U.S.C. § 1346(b), which authorizes recovery for personal injury, death, or property damage caused by negligent federal government employees acting within the scope of their federal employment.

2. This Court has personal jurisdiction over this action pursuant to 28 U.S.C. § 1346(b) against the United States of America, which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in the Federal District Court.

3. Venue is appropriate pursuant to 28 U.S.C. § 1402(b) because Plaintiff resides in the District of Columbia and because Defendant is the United States of America.

239323faea77b3bc

4.  Venue is also appropriate because the acts complained of herein occurred in the District of
    Columbia.


PARTIES

5.  Mr. Jones resides in Washington, DC at 909 New Jersey Ave., SE, #901, Washington, DC
    20003.

6.  Based upon information and belief, Plaintiff is employed by Defendant United States of
    America's agency the United States Capitol Police (USCP) which is located at 119 D Street
    NE, Washington, DC 20510.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.  The cause of action in this matter arose on November 30, 2015.

8.  Pursuant to 28 U.S.C. § 2675(a), on December 21, 2016 Plaintiff filed a Form 95 claim
    with the USCP. *See Exhibit A.*

9.  Plaintiff's December 21, 2016 claim was presented to the USCP within two years of
    accrual of the incident pursuant to 28 U.S.C. § 2401(b).

10. On June 16, 2017 the USCP issued Plaintiff a denial of the administrative tort claim filed
    by Plaintiff. *See Exhibit B.*

11. Pursuant to 28 U.S.C. § 2401(b) Plaintiff filed the instant case within six months of the
    agency's denial of his administrative tort claim.

STATEMENT OF FACTS

12. Mr. Jones has been an Officer with the United States Capitol Police Department for over
    fifteen years.

13. Mr. Jones works on the House Division, which includes the Longworth House Office
    Building located at 15 Independence Ave SE, Washington, DC 20515.

14. Julian Mitchell is a retired USCP officer who worked for the USCP as an officer from 1979-2014.

15. All non-exempt individuals entering the Longworth House Office Building are required to go through an access point and submit to security screening.

16. Exempt individuals include members of Congress and their spouses, officers of the House, armed law enforcement officers with proper USCP BAC credentials and Capitol Officials.

17. Mr. Mitchell was required to pass through a security check point when he entered the main entrance of the Longworth House Office Building.

18. The USCP offices in the Longworth Building are located in the Capitol Police House Divisions Operation Office (House Divisions Operations Office) Room B220 which is in the basement level.

19. All individuals entering the House Divisions Operations Office, are required to go through an additional access point which requires a "proxy" by USCP personnel to enter the secure area.

20. A "proxy" is the scanning of identification cards carried by authorized USCP personnel which grants entry to the House Division Operations Office.

21. Mr. Mitchell is well known to USCP personnel as a former USCP officer and was proxied into the House Division Operations Office.

22. Civilians and non-USCP personnel such as Mr. Mitchell, are also required to be escorted while in the House Division Operations Office.

23. While in the House Division Operations Office Mr. Mitchell was not escorted and visited a number of former USCP co-workers before walking into the computer room where Mr. Jones was working.

24. At 11:35am, Mr. Mitchell entered the computer room, approached Mr. Jones from behind and placed his hand on the back of Mr. Jones neck.

25. At the time of the incident, Mr. Jones was on duty, in uniform wearing his bulletproof vest, gun belt and a full complement of gear weighing 25-30 pounds and was sitting in the computer room working on a computer.

26. Mr. Mitchell suddenly and without notice, forcefully grabbed and squeezed the back of Mr. Jones neck, while Mr. Jones was leaning forward in front of a computer typing.

27. In pain, Mr. Jones reached his arms up and backward to remove the hand from his neck but was unable to do so.

28. As Mr. Jones struggled to remove the hand from his neck, Mr. Jones lifted himself out of his chair and attempted to turn to see who was grabbing and squeezing his neck.

29. As Mr. Jones attempted to rise out of his chair, the weight of his gear and the force of Mr. Mitchell's grip, impeded his movements, forcing him to twist his body as he tried to rise.

30. The force of Mr. Mitchell's grip on the back of Mr. Jones' neck was so severe that Mr. Jones' handcuff case snapped open as he struggled against the restraint of Mr. Mitchell's grip.

31. While being restrained by the grip to the back of his neck, Mr. Jones did not know the identity of the individual who had grabbed him from behind.

32. As Mr. Jones finally stood, he was able to break free and identified the person that grabbed him as retired USCP Sergeant Julian Mitchell.

33. Mr. Jones immediately felt a painful, burning sensation in his neck.

34. Mr. Jones was on duty at the time and could have arrested Mr. Mitchell for battery but he did not because he was not yet aware of the extent of his injuries.

35. Mr. Jones immediately reported the incident to his supervisors and, only initially, declined to press charges against Mr. Mitchell because he did not know the extent of his injuries.

36. Mr. Mitchell had a reputation for grabbing other personnel by the back of the neck and USCP personnel were aware of it.

37. While in the House Division Operations Office Mr. Mitchell visited and spoke to a number of former USCP co-workers before walking into the computer room where Mr. Jones was working.

38. A week after the incident, on December 7, 2015, while on duty, Mr. Jones experienced significant pain, burning, muscle spasms and numbness that required him to be transported to the emergency room at Medstar Georgetown University Hospital.

39. Tests were conducted including X-ray and MRI to determine the cause of the pain and burning in Mr. Jones neck.

40. On December 10, 2015, Mr. Jones was examined at Washington Primary Care Physicians due to extreme pain and burning in the neck area.

41. On December 28, 2015, Dr. Melis Sener, Mr. Jones' primary care physician examined Mr. Jones and advised him to work in light duty (desk job only) until January 4, 2016. *See Exhibit C.*

42. Dr. Sener subsequently provided a letter to Mr. Jones' employer to be placed on non-duty status until January 10, 2016 due to his symptoms and further recommended he follow up with a spine specialist. *See Exhibit D.*

43. Dr. Sener completed an Attending Physician Report (CA-20) and Duty Status Report (CA-17) regarding Mr. Jones' condition. *See Exhibits E and F.*

44. The Attending Physician Report and the Duty Status Report both indicated Mr. Jones had persistent pain and muscle stiffness as a result of Mr. Mitchell's forceful grabbing and squeezing of Mr. Jones' neck.

45. On December 30, 2015, Mr. Jones contacted the U.S. Capitol Police and informed them he wanted to press charges against Mr. Mitchell.

46. On January 5, 2016, upon referral from Dr. Sener, Mr. Jones had an evaluation of his neck pain done by Dr. Matthew Maxwell a sports medicine and interventional spine medicine specialist.

47. On January 11, 2016 Dr. Sener drafted a letter excusing Mr. Jones from duty from January 11, 2016 to January 25, 2016 based on persistent symptoms as a result of Mr. Mitchell's battery on Mr. Jones.

48. On January 11, 2016, Mr. Jones was informally interviewed by U.S. Capitol Police Criminal Investigations Division agents regarding the incident.

49. On January 13, 2016, Dr. Sener provided a letter stating: "My patient, Mr. JONES is not able to work due to his persistent symptoms. Please excuse him from work from 01/11/2016 to 01/25/2016." *See Exhibit G.*

50. Unable to physically perform the requirements of his job and upon his doctor's orders, Mr. Jones did not return to work as he sought evaluations of and treatment for his condition.

51. After a series of evaluations, on May 31, 2016, Dr. Maxwell concluded: "Given the above information, and the absence of prior symptoms predating the patient's reported injury, it is my medical opinion that the reported cervical and radiating arm symptoms correlate to his area of abnormality on cervical MRI. This area of focal abnormality is not consistent with gradual degenerative spinal disease. It does correlate with the patient's reported mechanism of injury, namely forced cervical flexion due to a blow from behind. For these reasons, it is my medical opinion that the above symptoms are secondary to the reported work related injury." *See Exhibit H.*

52. On June 9, 2016, Dr. Maxwell issued an addendum to his previous narrative report in which he stated the following: "1. Cervical Radiculopathy (ICD10-M54.12) – directly caused by forced cervical flexion injury on 11/30/15. 2. Deep Venous Thrombosis (ICD10-I82.409) – complication resulting from prolonged limitation in activity, secondary to above noted injury." *See Exhibit I.*

53. On September 28, 2016 Dr. Sener issued a statement: "My patient, Mr. Jones was injured in performance of duty 11/30/2015. His current symptoms are related to this injury and are not due to a pre-existing condition." *See Exhibit J.*

54. On March 27, 2017, Dr. Zorowitz a spinal cord injury specialist, indicated to a letter to the Department of Labor his belief that in addition to sprain of ligaments of the cervical spine and cervical disc disease with neuritis, Mr. Jones also suffers from post-concussion syndrome as a result of the injury.

55. As a result of the Cervical Radiculopathy suffered on November 30, 2015, Mr. Jones has been unable to return to work for all of 2016 and has exhausted his FMLA unpaid leave.

56. Mr. Jones has incurred significant medical expenses and his future as a member of the U.S. Capitol Police Department is unlikely to continue because he is physically incapable of performing the job due to his injuries.

57. Mr. Jones future employment with other employers is also in doubt as he struggles with his deteriorating medical condition brought about by the grab to the neck.

## Count I
## Premises Liability

58. Mr. Jones incorporates by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

59. Mr. Mitchell was a civilian on November 30, 2015 when he was proxied into the House Division Operations Office by USCP personnel.

60. USCP personnel owed a duty to Mr. Jones to not proxy civilians into the House Division Operations Office in violation of USCP directives.

61. USCP personnel owed a duty to Mr. Jones to not proxy in civilians they knew posed a risk of harm to others.

62. Mr. Jones was on duty in the computer room at the time Mr. Mitchell approached him from behind and committed the harmful contact by forcefully grabbing him by the back of the neck thereby injuring Mr. Jones.

63. USCP personnel breached the duty owed to Mr. Jones when they proxied in Mr. Mitchell into the House Division Operations Office and this breach was the proximate cause of Mr. Jones injuries.

64. The USCP had actual notice of the unsafe risk posed by allowing Mr. Mitchell entry into the House Division Operations Office because other USCP personnel previously complained Mr. Mitchell had grabbed them by the back of the neck.

65. It was therefore, reasonably foreseeable someone may be injured by Mr. Mitchell based on his history of forcefully grabbing USCP personnel by the back of the neck.

## **Count II**
### **Negligence**

66. Mr. Jones incorporates by reference all of the preceding paragraphs of this Complaint as if fully restated herein.

67.  The USCP owes a duty to Mr. Jones to follow the rules regarding entry into the USCP offices by civilians.

68. This duty includes acting in a reasonable and responsible manner.

69. The USCP owed a duty to Mr. Jones to escort civilians such as Mr. Mitchell and not allow them to roam freely within the USCP offices.

70. The USCP breached these duties when they failed to follow procedure by improperly providing a proxy for Mr. Mitchell to enter the USCP offices.

71. The USCP also breached their duty when they failed to escort Mr. Mitchell through the House Division Operations Office allowing him free access to the computer room where Mr. Jones was located.

72. It is reasonably foreseeable that a civilian allowed access to USCP offices, allowed free rein through those offices, with a reputation for forcefully grabbing people by the back of the neck, might result in a battery.

73. The USCP personnel's negligence furnishes a basis for government liability that is entirely independent of Mr. Mitchell's employment status with the USCP.

74. The injury has resulted in damages to Mr. Jones because he has been unable to perform his duties as a Capitol Police officer in 2016 and 2017, he has taken extended unpaid FMLA leave, has accumulated extensive medical expenses and his health insurance has been cut off by the USCP.

75. Mr. Jones damages are the direct result of the breach of a duty owed by the USCP which occurred on November 30, 2015 when Mr. Mitchell was improperly proxied into the House Division Operations Office and not escorted while in the offices.


WHEREFORE, Mr. Jones requests the Court to: (1) award actual and compensatory damages, to be determined at trial but no less than $2,200,000.00, (2) award costs of suit and attorney fees, and (3) grant such further relief as the Court deems appropriate.

DATED:  July 26, 2017

Respectfully Submitted,


/s/
_____
Ryan A. Hintzen, Esq.
Bar No. 495538
Franklin Square Law Group
1225 Eye St., NW, Ste. C-110
Washington, DC  20005
P: 202-595-9585
F: 202-478-0964
ryan@lawgroupfs.com

*Attorney for Plaintiff*